City of Toledo v. Lewis.

---

# NUISANCE.

[Lucas Circuit Court.]

Bentley, Haynes and Scribner, JJ.

† TOLEDO (CITY) v. LEGRENA LEWIS.

1. FILLING STREETS AND CAUSING WATER TO SET BACK ON ADJACENT PROPERTY. A CONTINUING NUISANCE.

    Filling certain streets in such a manner as to cause established drains to become worthless and to cause water to set back on adjacent property, constitutes a continuing nuisance, upon which suit may be brought from time to time and in which the statute of limitations may be pleaded.

2. OWNER ENTITLED TO DAMAGES FOR INJURY TO PROPERTY AND TO HEALTH.

    In such an action the owner is entitled to damages for injury to the property and damages for injuries to health, occasioned by the accumulation of stagnant water upon the land. But injuries to access to the property, resulting from filling the streets, are not to be considered in such action.

3. MEASURE OF DAMAGES IS RENTAL VALUE FOR FOUR YEARS PRIOR TO ACTION AND INJURY TO HEALTH DURING SAME TRIAL.

    The measure of damages is the difference in the rental value of the property for four years prior to the action and for injuries to health during the same period.

---

†The judgment in this case was affirmed by the Supreme Court, without report, 52 O. S., 624.

4. PROPERTY BOUND TO USE REASONABLE CARE TO PROTECT HIMSELF AND LESSEN INJURY.

It is error for the trial court, in such an action, to refuse to charge that the property owner is bound to use all reasonable care to protect himself and to avoid damages or whether time was any known or reasonable way in which he could have lessened the injury.

5. ALSO PROPER TO CONSIDER WHETHER OWNER SHOULD REMAIN UPON THE LAND.

And the court should also submit, under proper instructions, the question whether the property owner seould have remained upon the land, when his health was being so seriously impaired.

ERROR to the Court of Common Pleas of Lucas county.

HAYNES, J.

This is a matter that has occupied a good deal of our attention, for the reason that it raises some questions that are now new even in this court, under municipal law, some that are important and have required considerable attention.

This action is brought to reverse the judgment of the court of common pleas in a case brought by Mrs. Lewis against the City of Toledo for alleged injuries received by her in person and property, that is to say —her health and the use of her property—by reason of the filling of Huron street at the junction of Oak street and Superior street, and the petition is based upon the claim that by the filling of those streets and the raising of the catch basins at the corner that the water which would otherwise have flown off through the catch basins already furnished at that time, and for which she and the other citizens in common had paid, was, by this filling, set back upon the lot of the plaintiff and caused the property to become damp, wet and unwholesome and therefore she lost the use of her property and thereby was injured also in her bodily health, and she claimed damages and recovered a verdict for two thousand dollars in the court below.

There was testimony to show that Oak street between Huron street and Superior street had been filled in, to some extent, by unauthorized persons, and that the effect of that filling had been also to throw the water upon her lot; but that fact was not set up in the petition as a cause of injury to her lot, but that testimony also was allowed by the court to play some part as a cause of damage upon the trial of the case.

The first question that was raised before us on examination of the case is as to the character of that injury, what it is, and whether it is a continuing nuisance or whether it is of that class of injuries for which suit can be brought and a single judgment rendered, and which judgment when rendered, would be conclusive of the whole question of damages as between the parties to the suit; and, after a very full consideration of the cases that bear upon this question—and a good many authorities have been examined—we are of the opinion that the injury complained of, is a continuing nuisance, that is, one upon which suit may be brought from time to time and one in which the party who brings the suit recovers up to the time of the commencement of the action. It is one also in which the party might plead the statute of limitations as to injuries which occurred prior to a certain time before the commencement of the suit. In this case, the statute of limitations is discussed a good deal and is adverted to by the court, and the action is limited not very strongly, but rather indirectly, in the charge of the

court to injuries arising within four years prior to the commencement of the suit.

Counsel for the city contend very strenuously that there is no rightful cause of action here; that for whatever injuries plaintiff did receive, it is in legal parlance *damnum absque injuria*, and we have examined authorities upon that question quite extensively, and we are of opinion that the law of the land is, and ought to be, that for injuries resulting to the use of the property by reason of the turning of the water upon the property by these embankments, which otherwise would flow off, and from which injuries accrue to her in the use of the property, she is entitled to recover; and, further, that if she suffered in her health from the accumulations of foul water upon her lands caused by these acts of the defendant below, that for that she would be entitled to recover.

The causes of action are not stated separately in the petition, the injuries to her health and the injuries to the property are intermingled in one cause of action, but no objection is taken to that. Counsel assume that if there is an injury to her health that it goes without discussion that she is not entitled to recover, and counsel for defendant prayed the court to charge the jury that "Plaintiff is not entitled to recover anything on account of the injury to her health." The case of Story v. Hammond, 4 O., 376, clearly establishes the right of the plaintiff to recover for injuries to her health.

Coming now to the charge of the court, further on, the court was prayed to charge on behalf of the defendant below :

"1. Plaintiff is not entitled to recover anything on account of injury to her health.

"2. Plaintiff is not entitled to recover anything on account of any damage arising from the change of grade or improvement of Huron street.

"3. Plaintiff is not entitled to recover anything on account of damage arising from the change of grade or improvement of Superior street.

"4. Plaintiff is not entitled to recover anything on account of any damage arising from the failure of the defendant to supply drainage for the surface water falling or accumulating on Oak street.

" 5. Plaintiff is not entitled to recover anything on account of any damage arising from the filling of Oak street between Huron and Superior streets since the improvement of said Oak street prior to the year 1874.

" 6. Plaintiff is not entitled to recover anything on account of any damage arising from surface water flowing or running over to her premises from Oak street or adjacent premises.

"7. Plaintiff is not entitled to recover anything on account of any damage accruing since the commencement of this action.

"8. Plaintiff is bound to use all reasonable care to avoid damage."

In regard to the grading and filling of these two streets, the court charged the jury, as we think, correctly, charged very fully—in regard to the right of the city to fill the street and change the grade. The court also charged that the plaintiff was entitled to recover for injury to her health, within four years, and for injuries resulting to the use of her property; but the court, in our judgment, went further than it ought to have gone, and submitted to the jury questions of damage and causes of damage that the court ought not to have done.

Now, going back to the testimony, witnesses were allowed to testify —I take from page 44, from the testimony of Mr. Losec, and he is

allowed to testify what it would cost to raise the house, and then the question was put to him.

The Court: Q. Take that house and that lot, affected as it is by the drainage in its present condition? A. That reduces it the same ratio that the rental value is reduced; that is my opinion. Sold for some other purpose, it might be a different thing.

"Mr. Morris: Q. Can you tell us about how much that would be, in your opinion? A. That, I don't know as I could say. Probably that rental value doesn't represent a proper interest on the value of the property any way, as it now stands. The only way I could answer that question would be a depreciated per cent, which would be fifty per cent. I don't know what value to put on it. I will answer that question in this way; that the depreciation in money value would be $250 to $300 a year—in the rental value."

Now that, in our judgment, was competent.

"Q. On the selling value of the property what would be the depreciation? Assuming that there is no drainage on Oak street; that there is no sewer in the rear and there is no way of reaching it except to go through other people's property, what is its diminution in value in dollars and cents, in your opinion? A. Well my judgment would be from $1,000 to $1,500—what it would cost to put it in tangible shape, and to bring a fair rental."

Well, now, following up that question and some of that class, the court when it comes to charge the jury, after having charged the jury very fairly and very correctly as we think in regard to the matter, is led to submit to the jury some matters which we think the court ought not to have submitted to the jury, and I will commence to read on page 67:

"If she had an abundance of drainage, if she had a way of letting the water flow away from her lot and from the lot of her neighbors, and the neighbors property wouldn't shed water on her lot, or any accumulation by unauthorized persons of stuff in Oak street wouldn't add to her burden, she had a right to enjoy her property just as it then was, and the city would be liable for any injury that is the natural consequence flowing from that act. You will remember distinctly what I said. It is not a question nor would she be entitled to claim damages for the improvement of Superior or Huron streets, but for whatever injury was caused to her by the depriving her of the drainage that she had, of the comfort she enjoyed because the lot was dry and healthy, because of the access, so far as the access was concerned, and because it was a desirable place to live."

Now the question of access to the property was in no manner made before the jury, or if it was made in any way it was not a cause of action, because of the very fact that they had a right to fill these streets at these crossings, and any injury to the access to the property thereby would be a matter for which she could not recover. That is also stated, and that, as a general rule, would be so, but in submitting the question of damages, it is submitted to the jury in such form that they would have a right to take that into consideration and pass upon it and settle the whole question so far as this suit is concerned as to any loss she may sustain to the lot by the grade being higher; in short, he submits the same questions to them in this case that he would submit to them if the suit was brought for the filling of Oak street and changing its grade and filling it between Huron and Superior—questions that will be settled when that question is brought up. Then he proceeds to say:

"Now you would have the right to give her such compensation as will leave her property in just as good condition as it was before; whether she made the improvements necessary, or you by your verdict compel the city to do it. She could not insist that this street was now so changed that she must be enabled to put a brick block on it; to use the language of plaintiff, who testifies "there will always be dampness down here, and my house will be a less desirable place than it was; you must give me the value of a brick building."

That is what the plaintiff below had testified to on the trial.

"Perhaps not just that; but she must be made whole and be left in just as good condition as before the city undertook to do even a lawful act in an improper manner. Because the city might have provided drainage for Oak street even while it was improving Huron and Superior. If it didn't, and that causes the injury, that is the damage for which she has a right to claim compensation."

Finally he says:

"Of course there has been conflicting testimony on some points. That you will have to reconcile. That is entirely left with you. You are the judges of the testimony. From all the testimony, not from what you may guess, from what you think possibly somebody might have done; but you are simply from the witnesses before you do declare what is the injury to her by reason of being deprived of her lot, of the necessary drainage, and the accumulation of stagnant water, if any, on her lot. We think we have very nearly said all that is necessary."

Now, the question submitted there is too broad. We think the true rule of evidence to be offered is the difference in the value of the use of her property for the period of four years prior to the commencement of this action. Testimony was given here tending to show that the rental value of the house had depreciated in a certain amount of money. That was proper evidence to go to the jury and it was a proper rule for them to take in arriving at the estimate of damages. The injury to her health was confined to a period of four years prior to the commencement of the suit. That was proper.

Now there is another question, and there was an eighth charge prayed:

"8. Plaintiff was bound to use all reasonable care to avoid damage."

We think the court should have submitted to the jury some charge upon that question. We understand he declined to charge upon that point of law. It seems to us that while she would have a cause of action for the water that is turned in upon her, but still the well established rule of law is that she should use reasonable care to protect herself, to lessen if she could do so, and there was a way to do so, the damages which she was liable to suffer by the continuation of these causes of action. The question to be submitted to the jury, of course, is: Whether there was any known or reasonable way whereby she could have lessened that injury under her power and control. The testimony shows that the catch basins had been raised at the corners and that there was a sewer in the street and it might be a question whether she would have any right to tap that sewer or connect into it, and these were matters which should have been submitted to the jury and which were open for evidence upon the trial of the case. We do not intend to assume that there were any steps that she could have taken to lessen the damages or reduce the injury which she received; but, whether there was or not, it

should have been submitted to the jury under proper care and limitations.

We think this woman has suffered great injury at the hands of the city. We regret being compelled to reverse this judgment; but we think, there has occurred in the charge of the court error which has operated to the material and manifest injury of the plaintiff in error, and that for that reason the judgment should be reversed and the verdict set aside and the case remanded for a new trial.

There is another matter in regard to the eighth request to the jury, and that is whether she should have remained there if her health was being so seriously impaired or injured, or whether she should have left, and that matter should be submitted to the jury under proper instructions, and testimony submitted to say whether or not she should have left and might have left; all those are matters which should have gone properly to the jury.

This matter of Oak street—it would seem that Oak street had been made a dumping ground by somebody and that earth has been put in there, and it is objected to and the court are asked to charge that as to the water that is turned in from that street, as to the most of it upon the lot, there can be no recovery. Now the court has practically said that the council might have taken steps for the proper drainage between these two points. The testimony shows that there was drainage before this filling was done and the city is bound to keep in repair these streets and we are of the opinion that if any unauthorized persons filled the street the city would be liable. That thing of itself was not made a ground of action other than the surface water as it then stood and it would perhaps be sufficient to try the case as upon the condition of affairs at the time the petition was filed—at the corner of Huron and Oak street.

Great care should be taken in trying this case to distinguish between those injuries which were permanent and those which were or might be sued upon and recovered from the filling of Oak street.

We have spent a good deal of time over this case and we can very well see that the court might have dropped into the use of this language inadvertently, not having sufficient time to examine the authorities prior to charging the jury. We think the law is clear as to what her rights are, but another thing is to keep strictly within the limits of them.

*C. F. Watts*, City Solicitor, and *W. H. A. Read*, for city.

*L. W. Morris*, for Mrs. Lewis.